77 So.2d 632 (1954)
The RICHARD STORE COMPANY, a Florida corporation, Petitioner,
v.
FLORIDA BRIDGE & IRON, Inc., a Florida corporation, Respondent.
Supreme Court of Florida. En Banc.
July 19, 1954.
On Rehearing December 21, 1954.
Rehearing Denied February 18, 1955.
*633 John C. Sullivan, Miami, for petitioner.
Boardman & Bolles, Miami, for respondent.
PER CURIAM.
This cause having heretofore been submitted to the Court on Petition for Writ of Certiorari upon the transcript of record and briefs to review the order of the Circuit Court for Dade County in said cause bearing *634 date of May 25, 1954 affirming the Judgment of the Civil Court of Record, in and for Dade County, Florida, dated December 22, 1953, and the record having been inspected, it is ordered that said Petition be and the same is hereby denied.

On Rehearing.
TERRELL, Justice.
Respondent, Florida Bridge and Iron Inc., a Florida corporation, instituted this cause by a petition in the Civil Court of Record, Dade County, to enforce a statutory mechanic's lien. Named as party defendants were the fee simple owner, The Richard Store Company, a Florida corporation, and the contractor, W.P. Ferguson Company, Inc., a Florida corporation. The petition prayed for judgment against the defendants in the amount of the lien for reasonable attorney's fees and that the fee simple interest of the owner be sold to satisfy the judgment and lien.
Following a rush of pleadings not necessary to delineate and the taking of testimony, the trial court entered a final judgment in favor of the respondent and against the fee simple owner in the sum of $3,496.66 plus costs, etc., and adjudicated a lien for such amount. In lieu of adjudicating a lien on the real property a surety bond was substituted by court order. On appeal to the Circuit Court of Dade County the judgment of the Civil Court of Record was affirmed. We are confronted by a petition for common law certiorari, seeking a review of the judgment of the Circuit Court of Dade County, affirming the final judgment of the Civil Court of Record.
The questions implicit in the factual background of the case are (1) whether under the circumstances the respondent sub-sub-contractor, Florida Bridge & Iron, Inc., is entitled to a mechanic's lien for the full contract price in accordance with the oral agreement with Ferguson, the sub-contractor, (2) was it necessary for Florida Bridge & Iron, Inc. to serve a cautionary notice on the owner, The Richard Store Company, as provided by Section 84.04(1), Florida Statutes, F.S.A., in order to claim a valid lien against it, and, (3) the claim for lien being filed within the three months' period provided by Florida Statute 84.16, F.S.A., was the claimant entitled to any more than the amount due on the contract with Ferguson by the contractor, Fred Howland, Inc., at the date of the filing of the lien, February 14, 1951. The answer to the latter question turns on whether or not the $1,000 payment made by the contractor to Ferguson was a "proper payment" within the meaning of that term as used in the Mechanics' Lien Act.
This Court in Shaw v. Del-Mar Cabinet Co., Fla., 63 So.2d 264, 266, quoted with approval 1 Florida Law Review 423 by Pringle as follows:
"This law imposes on the owner of real property on which improvements are being made the duty of disbursing the money due on the direct contract with the contractor in such a way as to furnish the greatest possible amount of protection of laborers, materialmen and others who performed services or furnish materials for the improvement. Provisions are included, however, for the protection of the owner; and he can, by properly paying the money due on the direct contract, avoid having any mechanics' liens enforced against his property. * * *"
If this is the correct rule how can it be said that the law imposes upon the owner the responsibility to a sub-sub-contractor not in privity with the contractor or the owner to disburse money due to the contractor who is not liable to the sub-sub-contractor by reasons of default of the sub-contractor to whom the contractor owes nothing? To impose such a burden upon the owner is unreasonable and illogical. How can it be said that the owner is authorized by statute to withhold such funds due to the contractor? The sworn statement required of the contractor, Section 84.04, F.S., F.S.A., before the owner can make a proper final payment would ordinarily be the account of the contractor with his materialmen and his sub-contractors and no *635 more. See Sheffield-Briggs Steel Products, Inc., v. Ace Concrete Service Co., Fla., 63 So.2d 924, and Bensam Corp. v. Felton, Fla. 1953, 63 So.2d 278. The sworn statement is for the benefit of the owner, the sub-contractor and the materialmen. The sub-contractor and materialmen, not being in privity with the owner, are entitled to such protection by reason of the contractor's liability to them, but such is not the case with a sub-sub-contractor.
Persuasive by analogy is the requirement of cautionary notice, see Section 84.04 F.S., F.S.A., as to those not in privity with the owner. The purpose of said notice is to impound money that would otherwise be paid to contractor as progress payments. The aggregate amount of such claims cannot exceed the contract price as diminished by the amount of money "properly paid" by the owner, Florida Statutes 84.02, F.S.A. The Mechanics' Lien Law is in apposition with the theory of subrogation. We do not adhere to the lien law as grounded on implied agency, ratification or quantum meruit followed in approximately 20 states. See 6 Miami L.Q. 246, 250, Note 36. There is no provision under the lien law casting a burden upon the owner or contractor to see that a defaulting sub-contractor pays his sub-contractors or materialmen.
In Bensam Corp. v. Felton, supra, the materialman to a sub-contractor was granted a lien only after the general contractor had made an independent contract to pay him. The Court reached the conclusion that if the owner paid funds on the contract to the general contractor after having been served with cautionary notice by the materialmen to the sub-contractor he did so at his peril. This conclusion is understandable in view of the fact that the contractor promised the materialman to the sub-contractor that he would pay him if the sub-contractor failed to do so and thereafter the materialman, on the strength of the new contract, furnished material to the job that otherwise he would not have done except on a cash and carry basis. The effect was to make the materialman of the sub-contractor a materialman to the contractor and thus to a class afforded a lien under the provisions of the Act.
In the instant case, Howland, the contractor, calmed the fears of the sub-sub-contractor after he completed his work under the Ferguson-Florida Bridge & Iron, Inc. contract by his oral promise that he would see that Florida Bridge & Iron, Inc. received its money. Florida Bridge & Iron, Inc., having previously completed their contract, could not and did not rely on said promise to furnish additional material to the job as was the determining factor in the Bensam case. To further illustrate Florida Bridge & Iron, Inc.'s non-reliance upon the contractor's oral promise (which in itself was conditional: "Don't you worry. He has a lot more work to do here.") the sub-sub-contractor informed the contractor that they had to protect themselves regardless and put a lien on the building. In this it becomes unnecessary to discuss the question of whether Florida Bridge & Iron, Inc. should have filed the cautionary notice provided by Section 84.04, F.S., F.S.A., or the extent to which they may claim a lien.
We have repeatedly held that the limitation on the scope of review of common law certiorari in cases of this sort is limited to (1) jurisdiction below and (2) the regularity of the procedure followed. This Court has limited the scope of inquiry by certiorari where the writ goes to inferior courts of record as compared with cases where the writ goes to officers or boards exercising quasi judicial powers in proceedings of a summary character out of the course of common law. Jacksonville, T. & K.W. Ry. Co. v. Boy, 34 Fla. 389, 16 So. 290; Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659. Because of the importance of this question to the construction contractors and the complicated state of the lien law, I feel that the question of substantive law presented herein should be answered.
The record presents a bona fide question on the regularity of the procedure followed in the Civil Court of Record as to whether that Court lost jurisdiction at the time it granted the motion for new trial. *636 Although this question has been resolved against the contention of the petitioner, I think that this Court should also inquire as to whether there is any evidence in the record to support the judgment sought to be reviewed. Schott v. Brooks, Fla. 1952, 56 So.2d 456.
It is our conclusion that there was no evidence to support the judgment entered in the Civil Court of Record. The trial court misinterpreted the legal effect of the uncontroverted facts and applied the wrong rule of law. It follows that certiorari must be and is hereby granted and the judgment of the Civil Court of Record is quashed.
ROBERTS, C.J., and HOBSON and BUFORD, JJ., concur.
THOMAS, MATHEWS and DREW, JJ., dissent.
MATHEWS, Justice (dissenting).
We denied a petition for writ of certiorari from the Circuit Court of Dade County. The cause was tried before the Civil Court of Record and was appealed, as provided for by the statutes, to the Circuit Court. The Circuit Court affirmed the Civil Court of Record.
Every question presented in this proceeding was presented to the Civil Court of Record and to the Circuit Court. Judgment was entered against the petitioner in the Civil Court of Record and was affirmed by the Circuit Court.
To grant the writ in this case would simply be affording the petitioner a second appeal when the Circuit Court is the appellate court of final jurisdiction unless there has been a departure from the essential requirements of the law. I have re-examined the record and do not find any such departure.
The former order, denying the petition for writ of certiorari, should be hereby adhered to, and for that reason, I dissent.
THOMAS and DREW, JJ., concur.