620 So.2d 1043 (1993)
DUVAL ASPHALT PRODUCTS, INC., Appellant,
v.
E. VAUGHN RIVERS, INC., a Florida corporation, and Safeco Insurance Company of America, a foreign insurance corporation, Appellees.
No. 92-1112.
District Court of Appeal of Florida, First District.
June 11, 1993.
Rehearing Denied July 21, 1993.
*1044 Thomas R. Ray and Claire M. Merrigan, of Caven, Clark, Ray & Tucker, P.A., Jacksonville, for appellant.
Robert Aguilar, Orange Park, for appellees.
BARFIELD, Judge.
Appellant, a prevailing sub-subcontractor in an action on a public construction bond pursuant to Section 255.05, Florida Statutes (1989), challenges the trial court's holding that it is not entitled to an award of attorney fees under sections 627.428 and 627.756, Florida Statutes (1989). We reverse.[1]
The Duval County School Board entered into a contract with appellee, E. Vaughan Rivers, Inc. (Rivers), to perform additions and alterations on an elementary school, and Rivers executed a performance and payment bond under section 255.05, Florida Statutes (1989). Rivers then entered into a contract with Torrible Land Development, Inc. (Torrible) to perform a portion of the work, including asphalt paving, and Torrible entered into a contract with appellant to lay asphaltic concrete. Torrible thereafter became insolvent and did not pay appellant when its work was completed, whereupon appellant notified Rivers and its insurer of its intention to look to the bond for payment. They refused to pay appellant for the supplies and services rendered on the sub-subcontract, and appellant successfully sued them.
As part of its claim, appellant sought attorney fees under sections 627.428 and 627.756, Florida Statutes (1989). Section 627.428(1) provides:
Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
Section 627.756 provides:
Section 627.428 applies to suits brought by owners, subcontractors, laborers, and materialmen against a surety insurer under payment or performance bonds written by the insurer under the laws of this state to indemnify against pecuniary loss by breach of a building or construction contract. Owners, subcontractors, laborers, and materialmen shall be deemed insureds or beneficiaries for the purposes of this section.
Appellees argued that section 627.756 does not expressly provide for an award of attorney fees to a prevailing "sub-subcontractor." Appellant contended that "sub-subcontractor" should be viewed as a generic term. The trial court denied the motion, finding that "as a matter of law Plaintiff is not entitled to an award of attorney fees." In order to properly construe section 627.756, we must first look to the development of the mechanics' lien law, to which the construction bond provisions of chapter 255 are inextricably tied.
From 1935 to 1961, chapter 84, Florida Statutes, provided a "contractor, sub-contractor, materialman or laborer" who complied with its provisions a lien on the real property improved "for labor or services performed or materials furnished." § 84.01-84.02, Fla. Stat. (1959). Section 84.01 defined "sub-contractor" as "a person other than a materialman or laborer who enters into a contract with a contractor for the performance of any part of such contractor's contract, or who enters into a contract with a sub-contractor as above defined, for the performance of any part of such sub-contractor's contract." Notwithstanding the statutory language, the supreme court *1045 in Richard Store Company v. Florida Bridge & Iron, 77 So.2d 632 (Fla. 1954), interpreted the mechanics' lien law as not protecting a "sub-sub-contractor" who was not in privity with the contractor or the owner, finding that unlike the "sub-contractor and materialmen," the "sub-subcontractor" was not entitled to such protection by reason of the contractor's liability to him.
The legislature overruled the supreme court's construction of sections 84.01 and 84.02 by enacting section 84.021, Florida Statutes (1961):
It is the legislative intent that materialmen furnishing materials to a subcontractor as defined in § 84.01 and a subcontractor as defined performing any part of a sub-contractor's contract shall, subject to compliance with the provisions of this chapter, have a lien and be entitled to the benefits of this chapter.
In Conway v. Sears, 185 So.2d 697, 698 (Fla. 1966), the supreme court observed that "Section 84.021 did not purport to alter or enlarge the grant of right to lien afforded by chapter 84, but only to restate or reaffirm the legislative intent as to the outer limits of its applicability," and interpreted the 1961 statute as granting the right of a lien only to those "no more remote in terms of privity with the owner than a sub-subcontractor."
In 1963, the legislature restructured the mechanics' lien statute and renumbered section 84.01 as section 84.011, which separately defined "sub-contractor" as "a person other than a materialman or laborer who enters into a contract with a contractor for the performance of any part of such contractor's contract" and "sub-sub-contractor" as "a person other than a materialman or laborer who enters into a contract with a subcontractor for the performance of any part of such sub-contractor's contract." The new statute, which replaced notions of privity with requirements of notice, contained separate provisions for liens of persons in privity with the owner and for liens of persons not in privity with the owner. §§ 84.022-84.061, Fla. Stat. (1963).
In Ceco Corporation v. Goldberg, 219 So.2d 475 (Fla.3d DCA), cert. discharged, 230 So.2d 149 (Fla. 1969), the court construed the 1967 version of the mechanics' lien statute which had been moved to chapter 713, Florida Statutes. It found that "subcontractor" as used in the provision providing for liens to persons not in privity with the owner "also encompasses sub-subcontractors when the law is read as a whole," observing that while statutory revisions after 1961 eliminated the term "sub-subcontractor" from the section delineating those entitled to the mechanics' lien, "the underlying reason for the subsequent revisions was not to change the scope of persons entitled to the statutory protection," but that these revisions were meant to remedy procedural defects which had led to "hidden liens" being placed against owners by persons not in privity, without notice to the owner. Id at 477.
The current concept of "lienors" in the mechanics' lien law, sections 713.01-713.37, Florida Statutes (1989), has carried forward and refined the legislative intent to protect those who provide labor or services or furnish materials constituting part of an improvement of real property, whether or not they are in privity with the owner, so long as they comply with the statutory requirements. Under section 713.01(10), this protection is extended to "sub-subcontractors" and materialmen supplying "sub-subcontractors."
The bonding provisions for construction of public buildings, chapter 255, Florida Statutes, have developed in parallel with the mechanics' lien law. Prior to 1977, any person contracting for the construction of public buildings was required to execute a bond to pay "all persons supplying him labor, material, and supplies, used directly or indirectly by the said contractor or subcontractors in the prosecution of the work provided for in said contract." § 255.05(1), Fla. Stat. (1975). In 1977, the statutory language was changed to require execution of a bond "conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons who are defined in s. 713.01, whose claims derive directly *1046 or indirectly from the prosecution of the work provided for in the contract." The 1977 version of section 713.01 defined "contractor," "laborer," "materialman," "subcontractor," and "subsubcontractor."
The language of the 1989 statute is substantially the same as the 1977 version, providing for a bond "conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons defined in s. 713.01 whose claims derive directly or indirectly from the prosecution of the work provided for in the contract." Under section 713.01(10), Florida Statutes (1989), "lienor" includes the following: contractors; subcontractors; sub-subcontractors; laborers; materialmen who contract with the owner, a contractor, a subcontractor or a sub-subcontractor; and professional lienors under section 713.03.
In 1985, however, section 255.05(1) was renumbered 255.05(1)(a) and subsection (b) was added. The new subsection, which directed the Department of General Services to adopt rules for handling retainage in contracts of $200,000 or less, referenced only "laborers, materialmen, and subcontractors, as defined in section 713.01." There are two possible interpretations of this amendment: either the legislature intended to omit all other claimants as defined in the preceding subsection (a) from the effect of the retainage rules, or else it intended to include all claimants under subsection (a) and unintentionally created the ambiguity. In view of the legislature's historic overruling of privity limitations and its presumed knowledge of judicial decisions construing the statute, we believe that it is much more consistent with logic and reason to conclude that the legislature intended to include all claimants from subsection (a) in subsection (b). Given the context in which the amendment arose, it is most reasonably interpreted as expressing the legislature's intent to include within the terms "laborers, materialmen, and subcontractors" all those not in privity with the owner whose claims are protected by adherence to the notice provisions of the mechanics' lien law.[2]
Turning to the application of the attorney fee provisions of section 627.428, Florida Statutes (1989), to suits brought under chapter 255 bonds through the operation of section 627.756, Florida Statutes (1989), it is immediately apparent that the language of section 627.756 has not changed since its inception during the days of "remoteness from privity." See § 627.0905(2), Fla. Stat. (1961).
Under section 627.756, attorney fees are payable in successful suits "brought by owners, subcontractors, laborers, and materialmen" against the surety insurer. Construing this statute to deny fees to all other claimants under section 255.05 would defy logic and reason. Common sense suggests that the legislature intended its reenactment of the attorney fee statute over the years to comport with its rejection of old privity decisions and its knowledge of *1047 judicial decisions construing the language of the relevant statutes to include those who perform under the construction contract and satisfy the applicable statutory notice requirements.
The trial court's denial of appellant's motion for an award of attorney fees is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
ZEHMER and MINER, JJ., concur.
NOTES
[1] We note that the recently amended section 255.05(2), Florida Statutes (Supp. 1992), which is not applicable to this case, provides for attorney fees for the prevailing party in an action brought to enforce a claim against a payment bond.
[2] We note without comment, because it is not at issue in this appeal, the fact that one of our sister courts has held that the term "sub-subcontractor" in the mechanics' lien statute encompasses "anyone not in privity with the owner performing a portion of a contract to enhance realty," i.e., a "sub-subsubcontractor" or beyond. Hey Kiley Man, Inc. v. Azalea Gardens Apartments, 333 So.2d 48 (Fla. 2d DCA 1976). A year later, in William H. Gulsby, Inc. v. Miller Construction Company, Inc., of Leesburg, 351 So.2d 396 (Fla. 2d DCA 1977), the same court held that a supplier of labor and materials to several subcontractors was a "sub-sub-sub-subcontractor" and was thus too remote to recover under a section 255.05 public works bond, distinguishing Hey Kiley Man on the ground that it involved an action to foreclose a mechanics' lien, and observing:

The Florida Supreme Court wrote in Fulghum v. State, 92 Fla. 662, 109 So. 644 (1926) that the passage of Section 255.05 by the Florida legislature was for the broad general purpose of affording to those supplying labor and materials on public works projects a means of protection in lien of the lien afforded to them on private work as provided by the statutes. Thus, there may very well now exist a lack of parity in coverage and protection in the law between the mechanics' lien law encompassed in Chapter 713, relating to private work projects, and Section 255.05, Florida Statutes, relating to the bonds of contractors constructing public buildings. This might become a concern of future legislation but the same legislature which amended Chapter 713 has not amended Section 255.05.
351 So.2d at 397.